IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 21, 2018 Session

## KATHERINE E. ANDERSON v. MING WANG, ET AL

**Appeal from the Circuit Court for Davidson County**
**No. 15C1923    Thomas W. Brothers, Judge**

———————————————————

**No. M2018-00184-COA-R3-CV**

———————————————————

This is a health care liability case. The trial court granted Appellees' motion for summary judgment on Appellant's *res ipsa loquitur* claim under Tennessee Code Annotated section 29-26-115(c). Appellant appeals. Because Appellant presented sufficient evidence at the summary judgment stage to create a dispute of fact, we reverse the trial court's grant of summary judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Reversed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and BRANDON O. GIBSON, J., joined.

F. Dulin Kelly and Clinton L. Kelly, Hendersonville, Tennessee, for the appellant, Katherine E. Anderson.

James E. Looper, Jr., H. Buckley Cole, and Zachary L. Gureasko, Nashville, Tennessee, for the appellees, Dr. Ming Wang, and Wang Vision Institute, PLLC.

**OPINION**

**I. Background**

On February 20, 2014, Appellant Katherine E. Anderson underwent femtosecond ("femto") laser cataract surgery on her left eye; on February 27, 2014, Ms. Anderson underwent the same procedure on her right eye.[1] Dr. Ming Wang (together with Wang

_____

[1] Ophthalmologists began using femto lasers for cataract surgery about five years ago. Studies have shown that the benefit of the femto laser for cataract surgery is that the uncorrected visual acuity obtained with it is better than what is obtained when doing manual cataract surgery. Some studies have shown that endothelial cell loss is less when a femto laser is used to soften the cataract.

Vision Institute, PLLC, "Appellees") performed both procedures.[2]  An ophthalmologist performs cataract surgery by entering the cornea and pupil via an instrument, here a femto laser, immediately behind the pupil.  The natural lens in the eye is macerated and then drawn out of the eye through another instrument.  Once the natural cataract lens is removed, the artificial cataract lens is inserted in its place.[3]  During this process, fluid is introduced into the eye cavity to maintain pressure and to keep fluid from entering the inside wall of the cornea. The endothelium in the eye consists of endothelial cells on the inner surface of the cornea.[4]  These endothelial cells prohibit the fluid inside the eye from entering the cornea.[5]  Most adults with healthy eyes have endothelial cell counts in the mid-2,000s per eye.[6]

The parties agree that, before the surgeries, Ms. Anderson had reasonably healthy corneas and that her endothelial cell counts were normal.  Prior to her surgeries, Ms. Anderson had 2,481 endothelial cells in her left eye and 2,358 in her right eye.  The parties agree that some endothelial cell loss is common after cataract surgery.  In his deposition and affidavit, Ms. Anderson's expert, Dr. Alan Kozarsky, stated that the average endothelial cell loss in each eye during femto surgery is 5 to 15 percent.  In his deposition, Dr. Wang admitted that cataract surgery results in a "small percent" of endothelial cell loss, "[p]robably anywhere between 5 to 15 percent."  However, when questioned further, Dr. Wang stated that he was aware of studies that showed patients can lose up to 90 percent of their endothelial cells from cataract surgery.  In his affidavit, Dr. Kozarsky stated that the study Dr. Wang provided was not conducted with "normal" patients like Ms. Anderson; the patients in the study were people who "required a corneal transplant, one third had known endothelial disease, and a quarter had glaucoma or other . . . history of previous eye surgery."  Dr. Kozarsky's affidavit also stated that Dr. Wang provided no other study demonstrating that normal patients, such as Ms. Anderson, lost up to 90 percent of their endothelial cells from cataract surgery.  Furthermore, Dr. Wang testified that he was not aware of a study where a patient lost up to 80 or 90 percent of his or her endothelial cells after femto cataract surgery.

After surgery, the endothelial cell count in Ms. Anderson's left eye dropped to 739.  The surgery on Ms. Anderson's right eye resulted in a loss of all of the endothelial cells.[7]  Furthermore, the surgery resulted in corneal decompensation in Ms. Anderson's

---

[2] Wang Vision Institute, PLLC is a Tennessee Professional Limited Liability Company.  Its registered agent is Dr. Ming Wang.

[3] *A Picture of the Eye*, WEB MD.COM, https://www.webmd.com/eye-health/picture-of-the-eyes#2 (last visited September 18, 2018).

[4] W.M. Bourne, *Biology of the Corneal Endothelium in Health and Disease*, NATURE.COM (Nov. 20, 2003), https://www.nature.com/articles/6700559.

[5] Bourne, *supra* note 4.

[6] Bourne, *supra* note 4.

[7] Dr. Wang disputes that the cell count dropped to zero.  He stated that he "expect[ed] the count to be low, but that accurate measurements could not be obtained due to the swelling."

right eye. Corneal decompensation occurs when the cornea swells and is no longer clear. Corneal decompensation represents a devastating loss of almost all of the corneal endothelium. At the recommendation of a second ophthalmologist, Ms. Anderson underwent a corneal transplant on her right eye, but her vision remains impaired.

On May 15, 2015, Ms. Anderson filed her complaint in the Davidson County Circuit Court ("trial court"), alleging that Dr. Wang failed to act with ordinary and reasonable care in accordance with the recognized standard of acceptable professional practice. Further, Ms. Anderson alleged that, as a proximate result of Dr. Wang's alleged negligence, she was injured. On July 22, 2015, Ms. Anderson filed an Amended Complaint, wherein she asserted an additional theory of recovery under the doctrine of *res ipsa loquitur*. On August 13, 2015, Appellees filed an Answer to the Amended Complaint. On November 8, 2017, Appellees filed a Motion for Summary Judgment on the grounds that Ms. Anderson: (1) presented no direct evidence that Dr. Wang deviated from the standard of care; (2) produced no evidence that Dr. Wang's deviation from the standard of care caused Ms. Anderson's injuries; and (3) has not satisfied the statutory requirements necessary to proceed under *res ipsa loquitur* as codified at Tennessee Code Annotated section 29-26-115(c). Ms. Anderson filed a response in opposition to the motion for summary judgment on December 5, 2017.

By order of January 11, 2018, the trial court granted Appellees' motion for summary judgment. The trial court found that Ms. Anderson did not meet the essential elements of *res ipsa loquitur* under Tennessee Code Annotated section 29-26-115(c), in that she: (1) did not provide evidentiary support for her claim that the instrumentality that caused her injury was within Dr. Wang's exclusive control; and (2) did not provide evidentiary support that her injury was one that ordinarily does not occur in the absence of negligence. Specifically, the trial court found that Ms. Anderson's expert, Dr. Kozarsky, "never defined the applicable standard of care or how any instrumentality could have been improperly used contrary to the applicable standard of care . . . ." Furthermore, the trial court found that Ms. Anderson did not specifically state what instrumentality was under Dr. Wang's exclusive control. Ms. Anderson appeals.

## II. Issue

The sole issue for review is whether the trial court erred in granting Appellees' motion for summary judgment.

## III. Standard of Review

Appellant appeals the grant of summary judgment on her health care liability claim. A trial court's decision to grant a motion for summary judgment presents a question of law. Therefore, our review is *de novo* with no presumption of correctness afforded to the trial court's determination. **Bain v. Wells**, 936 S.W.2d 618, 622 (Tenn.

1997). This Court must make a fresh determination that all requirements of Tennessee Rule of Civil Procedure 56 have been satisfied. ***Abshure v. Methodist Healthcare-Memphis Hosps*.**, 325 S.W.3d 98, 103 (Tenn. 2010). When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. The Tennessee Supreme Court has explained that when the party moving for summary judgment does not bear the burden of proof at trial, "the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense." ***Rye v. Women's Care Center of Memphis, MPLLC***, 477 S.W.3d 235, 264 (Tenn. 2015) (italics omitted). Furthermore,

> "When a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" at the summary judgment stage "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." ***Matsushita Elec. Indus. Co.,*** [***Ltd. v. Zenith Radio Corp*.**], 475 U.S. [574,] 586, 106 S. Ct. 1348 [(1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.

*Rye*, 477 S.W.3d at 265.

### IV. Analysis

The plaintiff's burden in a health care liability action is set out in Tennessee Code Annotated section 29-26-115(a) and (b), to-wit:

> (a) In a health care liability action, the claimant shall have the burden of proving by evidence as provided by subsection (b):

> > (1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;

- 4 -

(2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and

(3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

(b) No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a), unless the person was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make the person's expert testimony relevant to the issues in the case and had practiced this profession or specialty in one (1) of these states during the year preceding the date that the alleged injury or wrongful act occurred. This rule shall apply to expert witnesses testifying for the defendant as rebuttal witnesses. The court may waive this subsection (b) when it determines that the appropriate witnesses otherwise would not be available.

Tenn. Code Ann. § 29-26-115(a), (b).

Where a plaintiff is unable to allege a specific act of negligence, the statute provides that a plaintiff may rely on the doctrine of *res ipsa loquitur* to create a rebuttable presumption of a defendant's negligence:

(c) In a health care liability action as described in subsection (a), there shall be no presumption of negligence on the part of the defendant; provided, that there shall be a rebuttable presumption that the defendant was negligent where it is shown by the proof that the instrumentality causing injury was in the defendant's (or defendants') exclusive control and that the accident or injury was one which ordinarily doesn't occur in the absence of negligence.

Tenn. Code Ann. § 29-26-115(c).

In **Gilreath v. Chattanooga-Hamilton Cty. Hosp. Auth.**, No. E2015-02058-COA-R3-CV, 2016 WL 3435788, at *8 (Tenn. Ct. App. June 15, 2016), this Court explained the origin of *res ipsa loquitur* in health care liability claims as follows:

Historically, *res ipsa loquitur*, defined, in pertinent part, by Black's Law Dictionary, 10th ed., as "the thing speaks for itself," was reserved for cases where the act was so obviously negligent that a layperson's common knowledge allowed an inference of negligence. **German v. Nichopoulos**,

- 5 -

577 S.W.2d 197, 202 (Tenn. Ct. App. 1978), *overruled by **Seavers v.***
***Methodist Med. Ctr. of Oak Ridge***, 9 S.W.3d 86 (Tenn. 1999). Our
Supreme Court later expanded the reach of the doctrine to include cases
that concern complex medical issues that are beyond the layperson's
general understanding and that require expert testimony to prove causation,
the standard of care, and/or that the injury does not ordinarily occur in the
absence of negligence. ***Seavers***, 9 S.W.3d at 97.

***Gilreath***, 2016 WL 3435788, at *8.

In its order granting summary judgment, the trial court stated:

10.    Defendants have established the insufficiency of [Ms. Anderson's]
evidence regarding Dr. Wang's exclusive control over the instrumentality
that caused the injury, an essential element of [Ms. Anderson's] claim.
[Ms. Anderson's] expert, Dr. Kozarsky, never stated to any degree of
medical certainty which instrumentation in the exclusive control of Dr.
Wang probably caused [Ms. Anderson's] injuries, nor did he indicate a
probable breach of the standard of care occurred by Dr. Wang's
implementation of any instrumentality.  Dr. Kozarsky never defined the
applicable standard of care or how any instrumentality could have been
improperly used contrary to the applicable standard of care, as required by
Tenn. Code Ann. § 29-26-115(a).

Respectfully, the trial court's ruling conflates the requirements of section 29-26-115(a)
with the *res ipsa loquitur* requirements of section 29-26-115(c).  Because Ms. Anderson
was proceeding on *res ipsa loquitur* grounds, her expert was not required to: (1) "state[]
to any degree of medical certainty which instrumentation in the exclusive control of Dr.
Wang probably caused [Ms. Anderson's] injuries;" (2) "indicate a probable breach of the
standard of care;" or (3) "define[] the applicable standard of care."

A plaintiff proceeding under a *res ipsa loquitur* claim is only required to prove the
elements in Tennessee Code Annotated section 29-26-115(c).  As explained by this
Court:

Under the doctrine of *res ipsa loquitur*, a plaintiff need not prove specific
acts of negligence by the defendant in order to get his case to the jury.
***Burton v. Warren Farmers Coop.***, 129 S.W.3d 513, 523 (Tenn. Ct. App.
2002) (citing ***Summit Hill Assocs. v. Knoxville Utils. Bd.***, 667 S.W.2d 91,
96 (Tenn. Ct. App. 1983); ***Parker v. Warren***, 503 S.W.2d 938, 942 (Tenn.
Ct. App. 1973)). The elements usually required for application of the
doctrine are:

(1) the event must be of a kind which ordinarily does not occur in the absence of someone's negligence;

(2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; [and]

(3) it must not have been due to any voluntary action or contribution on the part of the plaintiff.

W. Page Keeton, Prosser and Keeton on Torts 244 (5th ed. 1984 & Supp. 1988); *see Seavers*, 9 S.W.3d at 91 ("The plaintiff must demonstrate that he or she was injured by an instrumentality that was within the defendant's exclusive control and that the injury would not ordinarily have occurred in the absence of negligence.").

"[T]he doctrine of *res ipsa loquitur* is . . . a rule of circumstantial evidence, not a substantive rule of negligence law." Keeton, supra, at 244 (Supp. 1988); *accord Burton*, 129 S .W.3d at 525 ("*Res ipsa loquitur* is a rule of evidence, not a rule of law."). The doctrine is primarily used in jury trials to provide a framework to determine whether the plaintiff's evidence is sufficient to entitle him to get his case to the jury. *Burton*, 129 S.W.3d at 526 (citing *N. Memphis Sav. Bank v. Union Bridge & Constr. Co.*, 196 S.W. 492, 498 (Tenn. 1917); *Ford v. Roddy Mfg. Co.*, 448 S.W.2d 433, 437 (Tenn. Ct. App. 1969); *John Bouchard & Sons, Co. v. Keaton*, 9 Tenn. App. 467, 480 (1928)). Under the common law, if the requirements of *res ipsa loquitur* are met, it "permits, but does not compel, a jury to infer negligence from the circumstances of an injury." *Seavers*, 9 S.W.3d at 91 (citing *Poor Sisters of St. Francis v. Long*, 230 S.W.2d 659, 663 (Tenn. 1950); *Lewis v. Casenburg*, 7 S.W.2d 808, 811 (Tenn. 1928); *Armes v. Hulett*, 843 S.W.2d 427, 432 (Tenn. Ct. App. 1992)). Application of the doctrine allows an inference of negligence, but it does not "dispense with the plaintiff's burden of proof." *Id.* (citing *Summit Hill Assocs. v. Knoxville Utils. Bd.*, 667 S.W.2d 91, 96 (Tenn. Ct. App. 1983); *Oliver v. Union Transfer Co.*, 71 S.W.2d 478, 480 (Tenn. Ct. App. 1934); 57B Am. Jur. 2d Negligence § 1920 (1989)).

*Deuel v. Surgical Clinic, PLLC*, No. M2009-01551-COA-R3-CV, 2010 WL 3237297, at *10 (Tenn. Ct. App. Aug. 16, 2010).

The elements of *res ipsa loquitur* are: (1) "that the instrumentality causing injury was in the defendant's (or defendants') exclusive control . . . ;" and (2) "that the accident or injury was one which ordinarily doesn't occur in the absence of negligence." To survive summary judgment, Ms. Anderson is required to "set forth specific facts," for

each element of her *res ipsa loquitur* claim, "showing that there [was] a genuine issue for trial." ***Rye***, 477 S.W.3d at 265; Tenn. R. Civ. P. 56.06. On appeal, Ms. Anderson argues that she provided enough evidence, through deposition and affidavit testimony, to demonstrate a genuine issue for trial. We agree.

Concerning the first element of a *res ipsa loquitur* claim, i.e., "that the instrumentality causing injury was in the defendant's (or defendants') exclusive control . . .," Tenn. Code Ann. § 29-26-115(c), the trial court found:

> 11. [Ms. Anderson] asserts that she has met the "exclusive control" element because she was under Dr. Wang's exclusive care and control throughout both surgeries; however, the statute specifically speaks to the instrumentality causing the injury as what is within Dr. Wang's exclusive control, not whether [Ms. Anderson] herself was in Dr. Wang's exclusive control. To hold otherwise would allow every patient who is sedated during a procedure and who has an unexpected outcome to rely upon *res ipsa loquitur.*

> 12. Because [Ms. Anderson] has not provided any evidentiary support substantiating her claim that an instrumentality under the exclusive control of [Appellees] more likely than not caused her injury, as required by Tenn. Code Ann. § 29-26-115(c), [Appellees] have demonstrated the insufficiency of [Ms. Anderson's] evidence regarding this prong and negated an essential element of [Appellant's] *res ipsa loquitur* claim.

Turning to the record, during Dr. Wang's deposition, opposing counsel asked whether Dr. Wang "had exclusive control of the instrumentation throughout both surgical procedures." Dr. Wang answered, "That's correct." Appellees argued, and the trial court agreed, that because Ms. Anderson could not prove the exact instrumentality that caused her harm, she did not meet the first element of *res ipsa loquitur*. Respectfully, the way in which the trial court construes the first element of a Tennessee Code Annotated section 29-26-115(c) *res ipsa loquitur* claim is contrary to the doctrine itself. "Application of the doctrine [of *res ipsa loquitur*] is precluded in cases where evidence of a specific act of negligence is introduced at trial." ***Gilreath***, 2016 WL 3435788, at *8 (citing ***Hughes v. Hastings***, 469 S.W.2d 378, 397 (Tenn. 1971)). If Ms. Anderson was aware of the exact instrumentality that caused her harm, she would not have a *res ipsa loquitur* claim. The purpose of the doctrine is to provide patients with an avenue to the jury when they have been harmed during a medical procedure while either unaware or unconscious. "Claimants often have no knowledge of what happened during the course of medical treatment, aside from the fact that an injury occurred during that time." ***Seavers***, 9 S.W.3d at 95. Dr. Wang's own admission that he had exclusive control of the instrumentation during the procedures was sufficient evidence to create a dispute of fact for the jury. The trial court erred when it held otherwise.

Concerning the second element of *res ipsa loquitur*, i.e., "that the accident or injury was one which ordinarily doesn't occur in the absence of negligence," Tenn. Code Ann. § 29-26-115(c), the trial court found:

13. [Appellees] have also established the insufficiency of [Ms. Anderson's] evidence that this injury would not ordinarily occur absent negligence. Thus, [Appellees] have negated an essential element of [Ms. Anderson's] claim.

14. Dr. Kozarsky agreed in his deposition that endothelial cell loss can occur following the type of procedure that Dr. Wang performed on [Ms. Anderson]. Dr. Kozarsky also stated in his deposition that one of the most plausible scenarios is that something got inside [Ms. Anderson's] eye that the endothelium just did not like. Dr. Wang and Dr. Kozarsky both acknowledged that endothelial cell loss can occur in cataract surgeries without negligence.

Ms. Anderson's expert, Dr. Kozarsky, is a board certified ophthalmologist who has performed numerous eye surgeries, including LASIK, cataract, corneal transplant, and femtosecond. Dr. Kozarsky's deposition testimony demonstrated that the type of corneal decompensation Ms. Anderson experienced after her cataract surgery ordinarily does not occur absent negligence. Specifically, Dr. Kozarsky explained that "[i]n the absence of a known corneal abnormality, permanent swelling of the cornea is very, very, very uncommon." Further, he was "totally surprise[ed] and flabbergast[ed] [to see] corneal decompensation in what you thought was a normal cornea." He testified that, to see this type of corneal decompensation in a normal cornea "is as close to never as you can imagine, not zero, but as close to never as you can imagine." When asked whether permanent, post-surgical corneal edema occurs in the absence of a deviation from the applicable standard of care, Dr. Kozarsky answered: "That's not one of the things that generally happens without a cause." Dr. Kozarsky listed a few possible reasons for corneal decompensation and concluded by stating that he could not "think of a plausible reason why [Ms. Anderson] ended up[] with the corneas that she has under normal circumstances. And with all the information we have, [he couldn't] imagine why she is where she is." Finally, in his affidavit, Dr. Kozarsky stated: "Dr. Wang testified cell loss could have been caused by unusually rough handling of the cornea, improperly applying the laser to the cornea, high fluid introduced into the eye during surgery, or putting the wrong fluid in the eye which would be toxic.[8] In my opinion, any one of these would be

---

[8] Appellees argue that the most probable cause of Ms. Anderson's corneal damage is the result of the nurses injecting the wrong solution into Ms. Anderson's eye. Further, Appellees argue that, because the nurses are not Dr. Wang's employees, he is not responsible for their actions. Appellees are free to make this argument to the jury to rebut the presumption of Appellees' negligence. However, accepting

- 9 -

the product of operator negligence." Further, he stated "that the astounding cell loss would not have occurred but for [Dr. Wang's] surgery. The injury occurred at some point during the surgery." Dr. Kozarsky's testimony that the type of injury Ms. Anderson suffered does not occur absent negligence provides sufficient evidence to create a factual dispute for the jury. Having presented specific facts to support both elements of her *res ipsa loquitur* claim, Ms. Anderson has demonstrated that there are genuine issues of material fact to be resolved. Therefore, the trial court erred in granting summary judgment.

## V. Conclusion

For the foregoing reasons, we reverse the trial court's order. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against the Appellees, Ming Wang, M.D. and Wang Vision Institute, PLLC, for all of which execution for costs may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE

---

this argument as true is premature at the summary judgment stage, where we must give all reasonable inference in favor of the non-moving party. *Bain*, 936 S.W.2d at 622 (citing *Byrd v. Hall*, 847 S.W.2d 208, 201-11) ("Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor.").