W. EDWARD FRENCH, M.D., and BAPTIST MEMO-
RIAL HOSPITAL, Plaintiffs in Error, v. REBECCA
ANNE FISCHER, b/n/f FRANK E. FISCHER, and
FRANK E. FISCHER, Individually, Defendants in
Error.—362 S. W. (2d) 926.

Western Section, at Jackson. May 29, 1962.

Certiorari Denied by Supreme Court December 7, 1962.

588

Cooper Turner, Jr., and Morgan Fowler, Memphis, for plaintiff in error W. Edward French, M.D. Canada, Russell & Turner, Memphis, of counsel.

Neely, Green & Fargarson, Memphis, for plaintiff in error Baptist Memorial Hospital.

Robert R. Krivcher, Memphis, for defendants in error.

BEJACH, J. This cause involves an appeal in the nature of a writ of error from judgments entered in the Circuit Court of Shelby County against both Dr. W. Edward French and the Baptist Memorial Hospital for $40,000 in favor of Rebecca Anne Fischer, and for $6,500 in favor of Frank E. Fischer. Said judgments were rendered and entered against both Dr. W. Edward French and the Baptist Memorial Hospital; and both of them have appealed. These judgments resulted from the leaving of a surgical sponge in the abdominal cavity of Rebecca Anne Fischer when an operation was performed on her May 20, 1959.

The jury returned a verdict against both Dr. French and the Baptist Memorial Hospital in favor of Frank E. Fischer, father of Rebecca Anne Fischer, for $12,500, but the trial judge suggested a remittitur of $6,000 which was accepted under protest and judgment for him was entered for only $6,500. After accepting the suggested remittitur under protest, Frank E. Fischer excepted and prayed an appeal in the nature of a writ of error, which appeal he has perfected, and same is before us along with the appeals of both defendants.

For convenience, the parties will be referred to in this opinion, according to the status which they occupied in the lower court, as plaintiffs and defendants, or called by their respective names.

An enormous record was sent up in this case, consisting of twelve volumes containing in excess of 2,000 pages. In spite of the voluminous record, the issues of this cause are comparatively simple. They boil down to whether the judgments should be affirmed against either Dr. French or the Baptist Memorial Hospital, or against both of them. There is also involved, of course, the question of whether or not the $6,000 remittitur should be restored in favor of Frank E. Fischer against either or both Dr. French and the Baptist Memorial Hospital. In addition, there is a motion of Dr. W. Edward French to strike portions of the transcript of the record in this cause, and retax the costs by disallowing the costs of the Circuit Court Clerk of Shelby County for such portions of the transcript, if same be stricken.

As originally brought, the suit of both plaintiffs was against Dr. F. Pearson Allen, as well as against Dr. French and the Baptist Memorial Hospital. At the conclusion of the proof, however, the suit was dismissed as to Dr. Allen, and he was not before this court on the appeals.

The facts of this case are as follows:

Rebecca Anne Fischer was born May 2, 1959 at Methodist Hospital, Memphis, Tennessee. On or about May 17, 1959, she began to have severe vomiting attacks. Her parents called in Dr. F. Pearson Allen, and on May 20, 1959, Dr. Allen diagnosed the baby's ailment as pyloric stenosis, and advised Mr. and Mrs. Fischer that an operation would be necessary. After consultation with Dr. Allen, Dr. W. Edward French was employed to perform the operation; and at 3:00 P.M., on the same day, May 20, 1959, Rebecca Anne Fischer was admitted to the Baptist Memorial Hospital. The operation was scheduled

for 7:00 o'clock that evening. At the time the operation was scheduled, Dr. French notified the operating room supervisor as to the type of surgery to be performed, so that the type, size, and number of instruments that he would need to use for the operation, would be furnished. Dr. French selected as his surgical assistant, Dr. Whit Johnson, a third year surgical resident at Baptist Memorial Hospital. The hospital selected and furnished the nurses who assisted in the operation. These nurses consisted of a "scrub nurse" or "sterile nurse" and a "circulating nurse" or "dirty nurse". The scrub nurse wore a sterile gown and mask and assisted at the side of the patient during the operation. The circulating nurse assisted, also, but did not come within the sterile field. In addition to the operating instruments, the hospital furnished certain gauze sponges of various sizes. These were arranged in bundles of twelve. During the course of the operation, these sponges were picked up singly by the scrub nurse, and her count of same was supposed to be witnessed and verified by the circulating nurse, although the circulating nurse would not touch them. During this particular operation, Dr. French sent the circulating nurse out of the operating room for collodion to be used as a dressing. The circulating nurse had difficulty in finding the collodion, and was out of the operating room during a large part of the time consumed by the operation. The scrub nurse verified the count of sponges used and removed from the incision; but, in this case, she made an incorrect count. The result was that one of the sponges, four inches by four inches in dimension, was left in the incision. Because of the absence of the circulating nurse from the operating room, the scrub nurse's count was not verified.

The proof in this case shows that there are several methods of preventing the leaving of sponges in patients during operations, or of checking for same after the incision is closed. Among such methods is that of having tapes tied to each sponge with a ring attached thereto hanging on the outside of the incision. In the instant case, however, only the count of sponges by the scrub nurse and the circulating nurse was relied on; and, as stated above, in this case, the circulating nurse did not verify the count.

Rebecca Anne was discharged from the Baptist Memorial Hospital on May 27, 1959. About June 20, 1959, she became irritable and developed abdominal distension. Mrs. Fischer took the child to Dr. F. Pearson Allen for examination, because of her extreme irritability, and because she had not had a bowel movement for two days. On June 22, 1959, Mr. and Mrs. Fischer took the baby to LeBonheur Hospital where Dr. Earle L. Wrenn, after certain diagnostic studies, advised them that a surgical sponge had been left in the abdominal cavity. This sponge was then surgically removed, and along with it about two-thirds of the child's small intestine, which had become gangrenous, including the ileocecal valve. Suit was then filed by Rebecca Anne Fischer, by and through her father, Frank E. Fischer, as next friend, and by Frank E. Fischer, individually, against Dr. French, the Baptist Memorial Hospital, and Dr. F. Pearson Allen. After a long and involved trial, suit against Dr. Allen was dismissed. Verdicts were returned against both Dr. French and the Baptist Memorial Hospital for $40,000 in favor of Rebecca Anne Fischer and for $12,500 in favor of Frank E. Fischer. After reduction of the father's individual verdict to $6,500, judgments were

entered against Dr. French and the Baptist Memorial Hospital. Thereafter, motions for new trial were made and overruled, after which appeals in the nature of writs of error were perfected by both defendants and by plaintiff, Frank E. Fischer.

Numerous assignments of error have been filed by both defendants, as appellants in this court. We deem it unnecessary to copy these into this opinion, or to discuss them separately. The vital and determinative question presented by each defendant is whether or not his or its motion for directed verdict should have been sustained. We think there was ample evidence to justify submission of the case to the jury as to both defendants. Any other questions presented by either of the defendants' assignments of error would not, in our opinion, justify a reversal, under the provisions of our Harmless Error Statute, 27-117 T.C.A., even if such questions, so presented, should be decided in favor of defendants.

■ Neither the doctor nor the hospital are insurors, but each may be held liable for negligence. Floyd v. Walls, 26 Tenn.App. 151, 168 S. W. (2d) 602; Gresham v. Ford, 192 Tenn. 310, 315, 241 S. W. (2d) 408; Spivey v. St. Thomas Hosp., 31 Tenn. App. 12, 211 S. W. (2d) 450; Sepaugh v. Methodist Hosp., 30 Tenn. App. 25, 202 S. W. (2d) 985; Rural Educational Ass'n. v. Anderson, 37 Tenn. App. 209, 261 S. W. (2d) 151; Rural Educational Ass'n., Inc. v. Bush, 42 Tenn. App. 34, 209 S. W. (2d) 761.

Each of the defendants in the instant case undertakes to place responsibility on the other. We think both are liable.

Dr. French, himself, testified as follows:

"Q Let me ask you, doctor, in the course of this operation, who puts a sponge in an incision such as in this instance?

"A It may be the surgeon or one of his assistants.

"Q Based on the custom or practice as is ordinarily applied—

"A It is quite possible—

"Q Let me finish, doctor—Who has control of the operation with reference to placing the sponges inside the wound, the doctor or the assistant?

"A Well, there is not a time when the doctor may say to the assistant, place a sponge there. He does it automatically. It is very true, perhaps, that the doctor would be in charge of that particular aspect, but he may or may not direct that assistant to do that.

"Q And the fact further remains that Dr. Johnson, who participated in this, was your assistant, as I understand you to have said just a minute ago, at your request, and he was acting under your direction?

"A Yes, sir.

"Q And he was under your full charge and supervision at that time in connection with that entire operation, is that correct?

"A Yes, sir.

"Q Doctor, during the course of an operation, as it has been heretofore stated, a surgeon is very much concerned about sponge counts all the way

through, is he not? If not in sponge counts, at least with the location and keeping track of the sponges?

"A Yes, we are concerned about everything that goes on in there. We are concerned with doing the job we have been hired to do, doing a good job, a good and live patient, a well patient. Anything that goes with that patient is our concern, yes, sir."

Dr. Norman Shapiro, the anesthesiologist, testified as follows:

"Q Doctor, you have had experience both here in Memphis and in other localities. I will ask you what is the ordinary, usual, and accepted custom and practice in this community insofar as responsibility of the surgeon in the course of an operation?

"MR. TURNER: For what purpose?

"Q Overall responsibility of the surgeon?

"A I believe the responsibility of the surgeon in this community is the same as it is in every other community with which I have any familiarity; that is, the surgeon is responsible for everything that goes on in the operating room unless his responsibility is specifically detailed to some other individual who is legally capable of assuming that responsibility. For instance, in this particular case, Dr. French would be responsible for everything, including the anesthetic except that by calling in me, another doctor, he divorced himself from the anesthetic responsibility, because I am legally capable of assuming the responsibility. Someone who is not a doctor could not assume that. That is, of course, just an example, I

believe the surgeon is responsible for everything unless that responsibility is divested from him."

On cross examination, Dr. Robert McBurney testfied as follows:

"Q During the course of the operation, the surgical nurse or the scrub nurse, she hands you the instruments that you need to perform the operation?

"A Yes.

"Q She is also there to hand you any equipment that you may happen to call for, is that correct?

"A Yes.

"Q Then there is, of course, the other nursing personnel in the room, and that is the circulating nurse. As I understand it, she is not sterile?

"A That is right.

"Q That means that she can circulate there in one part of the room outside of the sterile field?

"A Yes.

"Q On occasion you will direct her to go and call your office, and tell her to give them a message. That is correct, is it not?

"A Yes.

"Q She will also, at times, take messages for you on the telephone or answer pages for you?

"A Yes.

"Q In other words, the circulating nurse takes care of all the jobs that you would direct her to handle outside of the sterile field?

"A That is right.

"Q While the scrub nurse would handle all of those pieces of work that you would want her to do within the sterile field?

"A Yes.

"Q Of course, the scrub nurse does not actually use the sponges in the incision, itself. That would be the doctor or his assistant?

"A That is true.

"Q Of course it would be a custom and practice of skilled surgeons in this community as in all communities, that when they put a sponge in a patient they would take the sponge out?

"A That is true.

"Q During the course of the operation, as you say, you do not count sponges, but the nurse counts those for you, she keeps a running count?

"A That is right.

"Q You detailed that authority to her to make that count?

"A That authority has been detailed."

Dr. French, himself, admitted that it is a recognized medical fact that sponges may and do get lost in the abdominial cavity, and that to protect against this happening, various methods have been devised including the use of tape with marks or rings attached, extending outside the incision. It is undisputed in the record that this defendant did not use sponges with such tapes or rings attached. Also, it is clear that Dr. French sent the cir-

culating nurse out of the operating room for collodion, and thus prevented a double check on the count of sponges. In our opinion, the jury was justified in finding as a fact that Dr. French was guilty of negligence in leaving the sponge in Rebecca Anne Fischer.

■ The general rule is that the surgeon is liable for the acts of all personnel under his direction, control and supervision during the course of the operation, including the employees of the hospital furnished for his assistance. This rule is often referred to as ''The Captain of the Ship Doctrine''. There is, however, a line of cases which subdivides an operation into categories, those functions which are strictly medical in nature being grouped in one category, and those which are administrative in nature being placed in the other. Under this line of cases, the hospital as well as the doctor may be held liable for the negligence of its employees loaned to the doctor. In the case of Rural Educational Ass'n v. Bush, 42 Tenn. App. 34, 298 S. W. (2d) 761, Tennessee has elected to follow the line of cases which makes the counting of sponges an administrative function. From the opinion of the Court of Appeals, Middle Section, in that case, written by Hickerson, J., we quote as follows:

''It is the custom and practice that the operating surgeon is in complete charge of the surgery room and all personnel connected with the operation. In matters of professional skill or decision, it is the duty of the personnel (nurses, the anesthetists, or any others who may assist) to obey explicitly the orders of the surgeon. There are many matters, however, which do not involve professional skill or decision on the part of the surgeon. It is the custom and practice for the nurses to count the sponges

which are taken into the surgery room. After the operation, and before the incision is closed, the nurses again count the sponges which have not been used, then count the sponges which have been used, and see if they total the number originally brought into the surgery room. As a double check, two nurses are furnished: the scrub nurse, or surgery nurse; and the 'circulating' nurse. On the sponge count, the scrub nurse first makes the count, then the circulating nurse counts the sponges to see if the two nurses agree in their count.

"The surgeon relies upon the nurses for this sponge count. Before closing the incision, the surgeon inquires of the nurses about the sponge count. If they assure him the sponge count is correct, he closes the incision.

"In the case on trial, Dr. Schuler made such inquiry about the sponges and was informed by the scrub nurse that the sponges were accounted for. Whereupon, the surgeon closed the incision. The nurse, however, made a mistake. No circulating nurse had been provided for this operation, although a circulating nurse was required and commonly used. The sponges had not been correctly counted. One large, long sponge was left in the abdomen of plaintiff and lodged in one of his intestines." Rural Educational Ass'n v. Bush, 42 Tenn. App. 41-42, 298 S. W. (2d) 765.

In the Bush case, the hospital was held liable. The surgeon in that case had bought his peace by means of a covenant not to sue. That case, like the case at bar, was one where a sponge had been left in the patient's abdomi-

nal cavity. In that case, no circulating nurse had been furnished, whereas, in the instant case, a circulating nurse had been furnished, but she had been ordered out of the operating room by Dr. French, which prevented a verification of the count made by the scrub nurse. With reference to the question of liability for leaving a sponge in the patient's intestines, we quote from Judge Hickerson's opinion, as follows:

"Professional or expert testimony was not necessary to establish that leaving the sponge in a [patient's] body was negligence. Any layman would know that fact. Since we have held that there was evidence to support a finding by the jury that the nurse and Dr. Schuler were agents of defendant in connection with this operation on plaintiff, defendant cannot escape liability for their negligent acts. Poor Sisters of St. Francis v. Long, 190 Tenn. 434, 230 S. W. (2d) 659; Rural Educational Association, Inc., v. Anderson, 37 Tenn. App. 209, 261 S. W. (2d) 151; Spivey v. St. Thomas Hospital, 31 Tenn. App. 12, 211 S. W. (2d) 450; Sepaugh v. Methodist Hosp., 30 Tenn. App. 25, 202 S. W. (2d) 985." Rural Educational Ass'n v. Bush, 42 Tenn. App. 47-48, 298 S. W. (2d) 768.

On authority of Rural Educational Ass'n v. Bush, we think the judgment in the instant case against both Dr. French and the Baptist Memorial Hospital should be affirmed. In that case, the surgeon was not a party to the suit. For that reason, no judgment was entered against him; but he was held to be an agent of the hospital, and it seems clear that he would have been cast in the suit if he had been a party defendant. In the instant case, the judgment is against both the surgeon and the hospital.

There was evidence tending to show negligence on the part of both Dr. French and the scrub nurse. Dr. French must be held responsible for his own negligence and the Baptist Memorial Hospital for that of the scrub nurse. All assignments of error filed by both Dr. W. Edward French and by the Baptist Memorial Hospital will be overruled and the judgments against both of them will be affirmed.

We take up now the appeal of plaintiff, Frank E. Fischer. He has filed one assignment of error, which is that the trial court erred in suggesting a remittitur of $6,000, thus reducing the jury's verdict from $12,500 to $6,500,—which suggestion of remittitur was accepted under protest.

It is the contention of plaintiff, Frank E. Fischer, that because of the permanent injuries to his daughter, caused by removal of two-thirds of her small intestine and the ileocecal valve, she will be a continuing problem and expense to him, for which the jury's award of $12,500 is not excessive, and that his right to her services will be thereby diminished. There is no doubt from the evidence in the record that the child has and will continue to have nutritional problems affecting, and to some extent preventing her normal growth and development that she will be continually affected by the problem of diarrhoea, and that because of the psychological effect on the child, extraordinary care and attention will be necessary. All of this may be true, but the trial judge who heard all of the testimony and saw the witnesses face to face, may well have been of the opinion that adequate damages for these items had been included in the verdict of $40,000 returned in favor of Rebecca Anne Fischer, herself, which verdict he did not disturb.

The amount of a verdict in a personal injury case is one primarily for the jury, but secondarily for the trial judge who heard the evidence and saw the witnesses. Evidently the trial judge thought that $6,500 was ample to cover the medical expenses to which Frank E. Fischer, as father of the injured child, had been put, and to cover future, as well as present, loss of services to him. We do not feel justified in disturbing that ruling. Plaintiff's assignment in error will, therefore, be overruled.

■ There remains for disposition the motion of Dr. W. Edward French to strike portions of the transcript and retax the costs by disallowing the Clerk's fees for items unnecessarily and improperly included in the record. This motion enumerates items in volumes I, II, III and IV of the record which is before us. The great bulk of items alleged to be improperly included in the transcript on appeal are pretrial depositions which were not read in evidence at the trial. Obviously, these should not have been included. In addition, the motion complains of inclusion of a prolix declaration which had been stricken, and for which an amended declaration was substituted, the motion to strike for prolixity, demurrers filed which had been overruled and are not involved on the appeal, and notices to take depositions, no question with which reference to which is made on the appeal. We think the motion is well taken, and should be granted. Without inclusion of the unnecessary documents sought to be stricken, the record is still an enormous one. The Circuit Court Clerk should not have aggravated the situation by including unnecessary and additional items which could not possibly have benefited either party on appeal. If necessary, a reference will be ordered to determine, in

detail, the particular items to be stricken, and the amount of costs to be disallowed.

All assignments of error, of both defendants and of the plaintiff, filed in this court will be disallowed, and the judgments against Dr. W. Edward French and the Baptist Memorial Hospital in the sum of $40,000 in favor of Rebecca Anne Fischer, and for $6,500 against the same defendants and in favor of Frank E. Fischer will be affirmed. Judgments will be entered in this court for those amounts, together with interest thereon from January 3, 1961, the date of overruling the motions for new trial in the lower court.

The costs of the cause, minus the costs incident to items disallowed, will be adjudged against Dr. Edward French, the Baptist Memorial Hospital, and their sureties on the appeal bonds.

Carney, J., concurs.

Avery, P. J. (W. S.), concurs in result.

AVERY, P. J. (W. S.) (concurring). My colleague, Judge L. D. BEJACH, who prepared the foregoing opinion for this Court, bases his conclusion that the hospital is liable upon the case of Rural Education Association v. Bush, 42 Tenn. App. 47-48, 298 S. W. (2d) 761, and the cases supporting that opinion. I fear that trial attorneys may not quite arrive at the same interpretation of Judge BEJACH'S opinion, as applied to the facts of the case, as do his colleagues on the Court.

He has correctly said that Dr. Schuler was not a party defendant in Rural Education Association v. Bush, supra. He has said that he was found to be an employee of the hospital, which was the hospital of the Rural Education

Association and owned by a religious group, and the doctors were the direct employees of that hospital. The doctors were assigned in the Bush case by the hospital. The nurse was assigned in the Bush case by the hospital. There was only one nurse in connection with that operation. The nurse and the doctor were both employees of the hospital, and Judge BEJACH has correctly said that Dr. Schuler had "bought his peace by means of a covenant not to sue." In that case the surgeon's fee was paid by the hospital.

So that a correct application of that opinion to the instant case relates alone to the "scrub" nurse, Miss Jean Owens and her negligence. In the instant case there was also circulating nurses, a Miss Thompson to begin with, her "shift" ended and later a Miss Rose came in.

The scrub nurse, Miss Owens, had been trained by the hospital. She had been trained as a surgical nurse. The record shows that in her training she was so trained by the hospital that when serving in the capacity of a scrub nurse, acting within the sterile field of the operated patient, she would be required to, or that it was a part of her duty to count the sponges used by the surgeon, that is, the sponges that were used and thrown aside by him. This she did, and while the counting was not confirmed by the circulating nurse for the reasons stated in the majority opinion, she, the scrub nurse, made a mistake by miscounting the used sponges.

This nurse was not assigned to that surgery by Dr. French, nor by the parents of the child. She was assigned to that surgery by the hospital. The operating room and the equipment for the operation, including the instruments to be used by the surgeon, are furnished by

the hospital, and when charges are paid for this operating room and for this material that was used in the operation, such charges are made by the hospital directly and the doctor gets no part of it and has nothing to do with it.

The fact that the doctor was an approved staff member of the hospital with no other connection therewith, would not make the hospital liable for his negligence. There has to be something of a closer connection with the hospital by an employee or agent representing the hospital directly.

So it is that this nurse, Miss Owens, in performing the ministerial duty that she had been instructed to do in cases of this character, though under the direct instructions of the surgeon operating insofar as any aid she might be to him in the performance of the professional duty which he was required to do, the negligence with which she is charged is such that could be attributable only to the hospital.

So it seems to me that it should be said, just as is said in the majority opinion, in practical effect, that Dr. French must be held responsible for his own negligence. That negligence consisted in leaving the sponge within the abdomen of the child. The hospital must be charged with the negligence of the nurse in failing to count the used sponges correctly and informing the surgeon that one was unaccounted for. Her failure to correctly count them was negligence, and so had she correctly counted the sponges which the surgeon had used and thrown aside, and had reported that there was a sponge missing, then the mistake that the surgeon had made would have been immediately called to his attention, an x-ray would have been brought into play which would have located the

sponge left in the abdomen and it would have been immediately removed.

In other words, the duty on the part of the nurse was to correctly count the sponges taken into the room and correctly count the sponges used and make the deduction necessary to account for every sponge that was carried into that operating room. In doing so she was the agent of the hospital. So she was negligent in failing to perform the duty that she had been taught to do and was required to do as an employee of the hospital acting as a surgical nurse.

Negligence, without going to the necessity of pointing out the opinions which define it, certainly can be said to be the leaving undone of some duty that should have been done as well as doing something that should not have been done.

Except for the fact that the nurse was assigned by the hospital, trained by the hospital, taught by the hospital to count the sponges and it was a part of her duty representing the hospital to do that correctly, the hospital could not be held liable.

Therefore, the distinctions made in this case from the one which has been used as the basis for the majority opinion, Rural Education Association v. Bush, supra, and the citations from that quoted part of that opinion are distinguishable in the respect that I have set out herein. The nurse's negligence only is that which binds the hospital as her employer.

Except for the fact that the circulating nurse was sent from the room by the surgeon, and had no opportunity to count the used sponges before the incision was closed, it

is probable that her failure to do so might also be a part of the proximate cause. Certainly the failure of the scrub nurse in making a proper count, calculation and giving the correct information to the surgeon is a part of the proximate cause resulting in the failure to perform the duty she owed to the patient, thereby binding her employer, the defendant hospital, which under the facts revealed by this record, would not have been liable for the damages resulting to the involved child. There is some competent, substantial and convincing evidence to support the verdict.